UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> SVR GROUP LLC, SVR GROUP FOODS, INC., and VR & VR GROUP INC. (collectively, d/b/a "Mayuri Indian Cuisine"), RAMANAIAH VAVILLA and SAILAJA SETTY, <br><br> Defendants. | CIVIL ACTION NO. 4:19-cv-40149-TSH |

## **FIRST AMENDED COMPLAINT**

Plaintiff Eugene Scalia, Secretary of Labor, U.S. Department of Labor (the "Secretary") seeks to have Defendants properly compensate their employees for Defendants' widespread failure to pay overtime premiums, where Defendants also failed to accurately record hours worked by the employees. The Secretary brings this action to enjoin Defendants from violating the overtime and recordkeeping requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "Act"), and to recover wages that Defendants failed to pay employees as well as liquidated damages. *See* 29 U.S.C. §§ 207, 211, 215(a)(2), 215(a)(5), 216(c), and 217.

I.

Jurisdiction of this action is conferred upon the Court by Section 17 of the Act, 29 U.S.C. § 217, and by 28 U.S.C. § 1331.

II.

Defendant SVR Group LLC, d/b/a Mayuri Indian Cuisine – Westborough ("Mayuri Westborough") is, and at all times hereinafter mentioned was, a corporation having a place of business at 30 Lyman Street, Westborough, Massachusetts 01581 within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, engaged at that place of business, and elsewhere, in the operation of a full service restaurant. Mayuri Westborough employs, and has employed, during the periods set forth below, employees who work as cooks, food preparation workers, and wait staff. Mayuri Westborough has at all times hereinafter mentioned set its employees' method of compensation and policies regarding compensation, set the specific levels of compensation for its employees, and maintained records of employment. In addition, Mayuri Westborough has set its employees' terms and conditions of employment including hours worked, supervised their work, and hired and fired them.

III.

Defendant SVR Group Foods, Inc. d/b/a Mayuri Indian Cuisine – Acton ("Mayuri Acton") is, and at all times hereinafter mentioned was, a corporation having a place of business at 5 Nagog Park, Acton, Massachusetts 01720 within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, engaged at that place of business, and elsewhere, in the operation of a full service restaurant. Mayuri Acton employs, and has employed, during the periods set forth below, employees who work as cooks, food preparation workers, and wait staff. Mayuri Acton has at all times hereinafter mentioned set its employees' method of compensation and policies regarding compensation, set the specific levels of compensation for its employees, and maintained records of employment. In addition, Mayuri Acton has set its employees' terms and conditions of employment including hours worked, supervised their work, and hired and

fired them.

IV.

Defendant VR & VR Group Inc. d/b/a Mayuri Indian Cuisine – Quincy ("Mayuri Quincy") is, and at all times hereinafter mentioned was, a corporation having a place of business at 271 Quincy Avenue, Quincy, Massachusetts 02169 within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, engaged at that place of business, and elsewhere, in the operation of a restaurant. Mayuri Quincy employs, and has employed, during the periods set forth below, employees who work as cooks and food preparation workers. Mayuri Quincy has at all times hereinafter mentioned set its employees' method of compensation and policies regarding compensation, set the specific levels of compensation for its employees, and maintained records of employment. In addition, Mayuri Quincy has set its employees' terms and conditions of employment including hours worked, supervised their work, and hired and fired them.

V.

Defendant Ramanaiah Vavilla ("Vavilla") has a regular place of business and transacts substantial business on an ongoing basis in this judicial district, within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, the treasurer, secretary and director of Mayuri Quincy, and, at all times hereinafter mentioned was one of the owners of Mayuri Quincy. Vavilla also has managed the aforementioned restaurants at all three locations. In that capacity, he operated the businesses, oversaw the operation of the businesses including both the front of the house and the kitchen portions of the restaurants, hired, fired, and supervised employees, and assigned employees their work. Vavilla, at all times hereinafter mentioned, has engaged in setting the particular hours of work for employees, the rates and

method of their compensation, and has determined the policies and practices regarding their pay. His actions concerning pay practices have affected the amounts of compensation received by employees. As such, he has actively managed, supervised, and directed the day-to-day business affairs and operations of Mayuri Westborough, Mayuri Acton, and Mayuri Quincy.

Vavilla has acted at all times material herein directly and indirectly in the interest of Mayuri Westborough, Mayuri Acton, and Mayuri Quincy in relation to their employees, and therefore is and has been an employer of the restaurants' employees within the meaning of the Act, *see* 29 U.S.C. § 203(d).

VI.

Defendant Sailaja Setty ("Setty"), at all relevant times the spouse of Vavilla, has a regular place of business and transacts substantial business on an ongoing basis in this judicial district, within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, the manager of Mayuri Westborough, the president, treasurer, secretary, and director of Mayuri Acton, and is the owner of Mayuri Westborough and Mayuri Acton. Setty also has managed the above-named restaurants at all three locations. In that capacity, she operated the businesses, oversaw the operation of the businesses including both the front of the house and the kitchen portions of the restaurants, hired, fired, and supervised employees, and assigned employees their work. Setty, at all times hereinafter mentioned, has engaged in setting the particular hours of work for employees, the rates and method of their compensation, and has determined the policies and practices regarding their pay. Her actions concerning pay practices have affected the amounts of compensation received by employees. As such, she has actively managed, supervised, and directed the day-to-day business affairs and operations of Mayuri Westborough, Mayuri Acton, and Mayuri Quincy.

4

Setty has acted at all times material herein directly and indirectly in the interest of Mayuri Westborough, Mayuri Acton, and Mayuri Quincy in relation to their employees, and therefore is and has been an employer of the restaurants' employees within the meaning of the Act, *see* 29 U.S.C. § 203(d).

VII.

From January 1, 2015 to at least January 1, 2018, Defendants were engaged in related activities performed through unified operation or common control for a common business purpose, and they are, and at all times hereinafter mentioned were, an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

From January 1, 2015 to at least January 1, 2018, Defendants employed employees in the activities of said enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. Said enterprise, at all times hereinafter mentioned, had an annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated). Accordingly, the employees have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the Act, 29 U.S.C. § 203(s).

**<u>Violations of Sections 7 and 15(a)(2) of the Act, Failure to Pay Overtime Premiums</u>**

VIII.

From January 1, 2015 to January 1, 2018, Defendants willfully and repeatedly violated the provisions of Sections 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207 and 215(a)(2), by employing employees for workweeks longer than 40 hours without compensating them at rates not less than one and one-half times the regular rates at which they were employed for hours

worked in excess of 40 hours in said workweeks. Therefore, Defendants are liable for overtime compensation owed to these employees and an equal amount of liquidated damages under Section 16(c) of the Act, 29 U.S.C. § 216(c), as set forth below.

IX.

The U.S. Department of Labor's Wage and Hour Division (the "Wage and Hour Division") conducted an investigation of Defendants, focusing on the period from January 1, 2015 through January 1, 2018 (the "Period of Investigation"). The Wage and Hour Division's investigation determined that during this Period of Investigation a total of 34 employees of Defendants regularly worked more than 40 hours per workweek without receiving proper overtime compensation. These employees worked as cooks, food preparation workers, and wait staff.

X.

During the Period of Investigation, Defendants compensated the affected employees by paying them a set amount of pay semi-monthly. These workers received no overtime premium in weeks in which they worked in excess of 40 hours.

XI.

Defendants failed to record the hours worked over 40 hours in a workweek by employees for the Period of Investigation. Given the lack of these required records, the Secretary, during his investigation, gathered information about the hours employees worked and derived average weekly hours worked for each employee.

XII.

The affected employees generally worked the following hours each workweek during the Period of Investigation.

The schedule of work for the kitchen staff generally entailed working six days per week, though at Mayuri Acton the kitchen employees worked slightly fewer hours than the kitchen workers at the other restaurants. Four of these six days fell within the period of Sunday through Thursday, during which the kitchen employees worked four days on and one day off. During these days, the kitchen employees generally worked a lunch shift totaling five hours, with a short break of approximately 15 minutes. The restaurants are closed from 2:00 or 2:30 p.m. until 5:00 p.m. on each of these days. Starting at 5:00 p.m., the kitchen employees generally worked a second five-hour dinner shift, with a short break of approximately 15 minutes. The kitchen employees therefore generally worked a total of 10 hours each of the four days that they worked during the period from Sunday through Thursday. The kitchen employees, in addition, worked both Friday and Saturday. On Friday and Saturday, the kitchen employees generally worked a five and one-half hour lunch shift with a short break of approximately 15 minutes, and then generally worked a second five and one-half hour dinner shift, with a short break of approximately 15 minutes. The kitchen employees therefore generally worked a total of 11 hours on Fridays and 11 hours on Saturdays.

The servers generally worked six days per workweek as well. On all days that the servers worked, they worked a lunch shift with a short break of approximately 15 minutes, and returned to work a dinner shift with a short break of approximately 15 minutes. The servers worked three days with one day off during the period Monday through Thursday. On these three days, the servers generally worked nine hours per day. The servers, in addition, worked Fridays,

Saturdays, and Sundays. On Fridays and Saturdays, the servers generally worked a lunch shift and a dinner shift totaling nine and one-half hours each day. On Sundays, the servers generally worked a lunch shift and a dinner shift totaling eight and one-half hours.

In addition, employees sometimes worked on catered affairs, which required longer hours than those set forth above.

XIII.

Based on the hours worked information that the Secretary gathered, the affected employees worked the following hours per week, on average, at each of the restaurants: at Mayuri Westborough, 62 hours for kitchen employees and 54.5 hours for servers; at Mayuri Acton, 59.5 hours for kitchen employees and 54.5 hours for servers; and at Mayuri Quincy, 62 hours for kitchen employees (there were no servers employed at Mayuri Quincy, which operated on a take-out basis).

A. One example of this violation is that during the workweek of August 17, 2017 through August 23, 2017, a cook at Mayuri Westborough worked a total of 62 hours, according to the average hours worked as calculated by the Secretary, and was not paid the additional half-time premium for 22 hours of overtime the employee worked.

B. A second example of this violation is that during the workweek of June 3, 2016 through June 9, 2016, a server at Mayuri Acton worked a total of 54.5 hours, according to the average hours worked as calculated by the Secretary, and was not paid the additional half-time premium for 14.5 hours of overtime the employee worked.

C. A third example of this violation is that during the workweek December 16, 2017 through December 22, 2017, a cook at Mayuri Quincy worked a total of 62 hours, according to the average hours worked as calculated by the Secretary, and was not paid the additional half-

time premium for 22 hours of overtime the employee worked.

XIV.

Employees received a set amount of pay semi-monthly from Defendants. The amounts paid by Defendants to each employee, when divided into weekly equivalents, varied from employee to employee. Those payments ranged from a weekly equivalent of $369.00 to $1,050.00, with no overtime premium paid when the employees worked hours over 40 in a workweek. Many employees were paid through payroll checks, and some employees were paid entirely in cash. Employees received food and certain employees also received housing from Defendants. The Secretary accounted for this food and housing when determining employees' regular rates of pay.

XV.

Defendants accordingly failed to pay proper overtime premiums to their employees included in the attached Exhibit A, as required by Sections 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207 and 215(a)(2). As a result, the Secretary found that Defendants owed 34 employees a total of approximately $274,985.28 in back wages, and approximately $274,985.28 in liquidated damages, for the Period of Investigation. The Secretary also seeks any back wages that Defendants owe to their employees for the time period from the end of the Period of Investigation through August 14, 2018, and an equal amount in liquidated damages.

**Violations of Sections 11(c) and 15(a)(5) of the Act, Failure to Make and Keep Records**

XVI.

For the Period of Investigation, Defendants willfully and repeatedly violated the provisions of Sections 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c) and 215(a)(5), in that they failed to make, keep, and preserve adequate and accurate records of employees' wages,

hours, and other conditions and practices of employment, as prescribed by regulations duly issued pursuant to authority granted in the Act and found in 29 C.F.R. Part 516, with respect to the work performed by employees during the Period of Investigation.

XVII.

For the Period of Investigation, Defendants failed to make, keep, and preserve records which show adequately and accurately all employees' hours worked each workday, their total hours worked each workweek, and all wages paid each pay period. In addition, Defendants failed to record payments to employees made in cash for the Period of Investigation.

**Defendants' Overtime and Recordkeeping Violations Are Willful**

XVIII.

Defendants' overtime and recordkeeping violations of the Act during the Period of Investigation, as set forth above, were knowing, deliberate, and/or intentional, or were done with reckless disregard for the Act.

XIX.

Defendants committed widespread and long-standing violations of the overtime and recordkeeping provisions of the Act, as described above.

XX.

Defendants, in committing said overtime and recordkeeping violations, failed to record any hours worked, such that the Defendants did not make even rudimentary efforts to establish a system of tracking hours so that they could properly pay overtime compensation to employees.

XXI.

When asked by the Wage and Hour Division why Defendants failed to pay the required overtime premium, Defendant Vavilla answered that all the Indian restaurants pay that way.

XXII.

During the Wage and Hour Division's investigation, Defendants provided false information to the Wage and Hour Division concerning the workers employed at Defendants' restaurants. Defendants provided to the Wage Hour Division lists of employees that omitted employees who were actually employed by Defendants, thereby underrepresenting the true number of employees.

XXIII.

During the Wage and Hour Division's investigation, Defendants set up time clocks, which provided the ability to record employees' hours worked. Defendants had not previously used a time clock during the period covered by this Complaint. Defendants subsequently required or caused employees to punch in and punch out at times that inaccurately reflected the actual hours worked by their employees. Defendants on occasion had an employee punch in and/or punch out for other employees at times that inaccurately reflected the actual hours worked by employees. In addition, Defendants asked some employees to sign time sheets that inaccurately reflected the actual hours worked by those employees. As a result of these actions, Defendants continued to pay employees approximately the same amount that they had paid employees prior to the Wage and Hour Division's investigation. Defendants' actions deprived employees of the overtime premiums that they had earned, while creating and maintaining inaccurate records that falsely portrayed the number of hours worked by employees.

XXIV.

Therefore, Defendants were aware of the overtime and recordkeeping requirements of the Act and yet they knowingly, deliberately, and/or intentionally violated those requirements, or

acted in reckless disregard of them.

**Prayer For Relief**

XXV.

During the period from January 1, 2015 to at least January 1, 2018, Defendants willfully and repeatedly violated the aforesaid provisions of the Act, as alleged.

WHEREFORE, cause having been shown, the Secretary prays that the Court enter an Order and judgment:

(1) Pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, from prospectively violating the Act; and

(2) Pursuant to Section 16(c) of the Act, 29 U.S.C. § 216(c), finding Defendants liable for unpaid back wages found due to Defendants' employees listed in the attached Exhibit A plus liquidated damages equal in amount to the unpaid compensation found due for the period from January 1, 2015 to August 14, 2018. Alternatively, in the event liquidated damages are not awarded, the Secretary prays for an Order pursuant to Section 17 of the Act, 29 U.S.C. § 217, enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, from withholding payment of unpaid back wages found due to Defendants' employees for the period from January 1, 2015 to August 14, 2018, and pre-judgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621; and

(3) Awarding the Secretary costs and fees associated with this action; and

(4) Granting such other and further relief as may be necessary and appropriate.

                                            Kate S. O'Scannlain
                                            Solicitor of Labor

| Post Office Address: | Maia S. Fisher |
| --- | --- |
| U.S. Department of Labor | Regional Solicitor |
| Office of the Solicitor | |
| JFK Federal Bldg., Room E-375 | */s/ James Glickman* |
| Boston, MA 02203 | James Glickman |
| Glickman.james@dol.gov | Senior Trial Attorney |
| TEL.: 617-565-2500 | Mass. BBO No. 550777 |
| FAX: 617-565-2142 | |

                                            Date: January 4, 2021